UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL VONAA,

    Plaintiff,

    V.                                                                                 No. 3:17-cv-01378 (WIG)

NANCY A. BERRYHILL,
Acting Commissioner
of Social Security,

    Defendant.
_____ X

## RULING ON PENDING MOTIONS

This is an administrative appeal filed by Plaintiff Michael Vonaa following the denial of his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff has moved for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 18]. The Commissioner has responded with a motion to affirm her decision. [Doc. # 19]. The Court

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

heard oral argument on these motions on November 30, 2018.  After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court reverses the decision of the Commissioner and remands for a calculation of disability benefits.

I.  **LEGAL STANDARD**

"A district court reviewing a final ... decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive…." 42 U.S.C. § 405(g).  Accordingly, the district court does not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the claimant's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his DIB and SSI applications December 5, 2013, alleging a disability onset date of July 26, 2009. His claims were denied at both the initial and reconsideration levels. Plaintiff then requested a hearing. On December 7, 2015 Plaintiff appeared and testified at a hearing before Administrative Law Judge Ronald J. Thomas (the "ALJ"). On February 1, 2016, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

Plaintiff was 29 years old on the date of the hearing before the ALJ. (R. 40). He has a high school education and past relevant work experience as a sales clerk/cashier. In accordance with the Court's scheduling order, the parties filed a joint statement of facts. [Doc. # 18-2]. The Court adopts this medical chronology in full, and incorporates it by reference herein.

## III.  THE ALJ'S DECISION

The ALJ followed the sequential evaluation process for assessing disability claims.[2] At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 21). At Step Two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder; anxiety disorder; and substance abuse disorder, in possible remission. (R. 21).

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings).  If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform.  20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on this last step.  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 22). The ALJ then determined Plaintiff retains the following functional capacity[3]:

> Claimant can perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to performing simple, routine, repetitive tasks that do not require teamwork or working closely with the public and require only occasional interaction with co-workers, supervisors, and the public.

(R. 24-29). At Step Four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 29). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 29-30). Accordingly, the ALJ found Plaintiff not to be disabled.

## IV. DISCUSSION

Plaintiff's arguments on appeal all relate to the ALJ's RFC finding. Specifically, Plaintiff argues that the ALJ improperly weighed and discussed the opinion evidence. In this case, the record contains a variety of medical opinions, including opinions from treating sources (Plaintiff's doctors and social workers), from a consulting source who examined but did not treat Plaintiff, and from state agency medical consults who reviewed Plaintiff's medical records.

### A. Medical Opinions

#### *Dr. Douglas Olson*

Dr. Olson, Plaintiff's treating physician and primary care provider since October 2013, completed an RFC assessment form on February 20, 2014. (R. 285-88). Dr. Olson rated Plaintiff as having "a serious problem" functioning in all aspects of the Plaintiff's activities of daily living, social interactions, and task performance. (R. 285-88). The ALJ gave "little weight" to

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

this opinion, reasoning that it was "quite conclusory, in a checklist format, providing very little explanation for the evidence relied on." (R. 27).

Dr. Olson also completed an RFC assessment form on November 8, 2013, in which he identified Plaintiff's diagnosis as "severe mental illness, anger, mood disorder/bipolar, ptsd." (R. 848). He rated Plaintiff as markedly limited in all functional areas. (R. 856-58). Dr. Olson completed a third RFC assessment form on December 22, 2014. (R. 810-19). Dr. Olson opined that the Plaintiff's mood disorder prevents him from working, and impacts his ability to work because he has "no skills and interaction with coworkers." (R. 810-12). Dr. Olson again rated Plaintiff as markedly limited in all functional areas. (R. 816-17). The ALJ gave no weight to either the November 2013 or the December 2014 opinion. The ALJ reasoned that "the claimant's ability to work is left to the purview of the Commissioner," and, that Dr. Olson's opinions were unsupported by his treatment notes indicating generally normal mental status examinations. (R. 28).

### *Rob Lockhart, LMSW*

Rob Lockhart, one of Plaintiff's social workers, authored a letter on December 13, 2015 in which he opined that Plaintiff was unable to care for himself and live independently. (R. 840). He opined Plaintiff needs a "mental health housing program that provides supports specific to his needs." (*Id.*). The ALJ gave Counselor Lockhart's opinion little weight, reasoning that the opinion that Plaintiff could not live independently was essentially an opinion that Plaintiff was disabled, which is left to the purview of the Commissioner. (R. 27).

### *Wendy Epstein, LCSW*

Wendy Epstein, Plaintiff's Case Manager, drafted a letter on October 26, 2015, in which she opined that Plaintiff has "difficulty functioning at even a basic level," as he suffers from disorganized thinking, paranoia, and angry outbursts which have resulted in numerous emergency room visits, police interactions, and "at least three overnight hospital stays for psychiatric reasons." (R. 870-71). She outlined Plaintiff's inability to follow direction and maintain focus due to internal preoccupation. (R. 870). Counselor Epstein also noted Plaintiff's "extremely disorganized, paranoid, anxious" nature, and his difficulty functioning, taking direction, maintaining focus, and socializing. She listed as examples that Plaintiff "struggled with housekeeping, paying his rent, taking his meds, keeping his appointments, preparing his meals and generally following the rules of the lease." (R. 870). She also indicated that Plaintiff was unable to follow his therapist's recommendations. (*Id.*). The ALJ gave this opinion little weight, stating that Counselor Epstein is not an acceptable medical source, and that her opinion was not supported by normal mental status exams and effectiveness of medications. (R. 27).

### *Robynne Quinn, LCSW*

Robynne Quinn, a social worker who worked with Plaintiff for three years, wrote a letter dated November 13, 2015. Counselor Quinn outlined Plaintiff's difficulty communicating, frequent need for redirection and reminders, and agitation and paranoia over the course of three years. (R. 885). She opined as to his "decline over the past couple of years" despite the supports he was receiving. (*Id.*). The ALJ stated that he considered the opinion, but that Counselor Quinn's letter does not provide an opinion as to Plaintiff's functional limitations. (R. 27).

### *David Cross, LCSW*

David Cross, another of Plaintiff's social workers, drafted a letter dated December 3, 2015. Counselor Cross's opinion, based on a treatment relationship of over ten years, provided a detailed history of Plaintiff's treatment and functional abilities over time. (R. 835). He opined that Plaintiff has struggled with and failed to meet treatment goals and key milestones, has poor boundaries and poor self-control, has had times of poor attendance at therapy sessions, and is inconsistent with medication compliance. (R. 835-36). He found that Plaintiff will engage in self-destructive behavior. (R. 837). Counselor Cross opined that Plaintiff has difficulty functioning socially due to delusions, misperceptions, and disorganized and impulsive actions. (R. 837). The ALJ did not discuss this letter.

*Nancy Kelly, Psy. D.*

On July 23, 2014, Nancy Kelly conducted a consultative exam of Plaintiff. In her report, she found that Plaintiff exhibited normal appearance, speech, and thought, with occasional periods of restlessness, a tense and anxious affect, and an anxious mood. (R. 383). She further indicated that Plaintiff maintained attention and concentration, but "appeared mildly impaired due to anxiety," and exhibited below average cognitive functions, limited insight, and poor judgment. (R. 384). She concluded Plaintiff may have "mild limitations learning new tasks… moderate limitations maintaining attention… [and] marked limitations performing complex tasks independently [and] making appropriate decisions, relating adequately with others, and appropriately dealing with stress." (R. 384). The ALJ gave "some weight" to Dr. Kelly's opinion and "limited the claimant to occasional interaction with others and the performance of simple work." (R. 27).

*State Agency Medical Consultants*

The ALJ assigned great weight to the opinions of the state agency medical consultants, whose opinions were based on review of evidence in the record prior to October 2014. (R. 26). The consultants, both psychologists, opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions, but could retain and comprehend simple work directives. (R. 80). They found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods, and work with the public or work with others without being distracted by them. (R. 80-81). The consultants opined, that while "mood and paranoid ideation anxiety may disrupt optimal performance and productivity," Plaintiff is able to behave appropriately and engage with adequate concentration to perform simple tasks in a solitary job in which he can work alone or with little interaction and that are not time-sensitive. (R. 81, 122). In giving these opinions great weight, the ALJ reasoned that the consultants' opinions were based on their specialties in mental impairments and an "Awareness of other evidence in the record." (R. 26).

### **B. Analysis**

On appeal, Plaintiff maintains that the ALJ erred by not giving great weight to the opinion of Dr. Olson, his treating physician, and by failing to adequately evaluate the opinions of his social workers when assessing his RFC. The Court agrees.

In making an RFC finding, the ALJ must analyze all evidence presented in the record including the medical opinions of treating and non-treating physicians as well as evidence from non-medical sources. The treating physician rule provides that a treating source's opinion on the severity of a claimant's impairments will be given controlling weight when the opinion is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). If an ALJ determines a treating physician's opinion is not

8

controlling, the ALJ must then consider several factors in determining how much weight it should receive. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Circ. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). These factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess*, 537 F.3d at 129. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney *v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (internal quotation marks omitted).

The rationale behind the treating physician rule is that "a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006). "The rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time." *Id.*

In this case, the ALJ erred by not giving controlling weight to Dr. Olson's opinion. Dr. Olson, who was Plaintiff's primary care provider since 2013, provided medical source statements in November 2013, February 2014, and December 2014. In the first statement, he assessed Plaintiff has having serious problems in the functional areas of activities of daily living, social interactions, and task performance. (R. 285-88). In the second and third statements, Dr. Olson

9

rated Plaintiff as markedly limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (816-17, 856-58).

When a treating physician's opinion is "well-supported by, and not inconsistent with, other substantial evidence in the record," it is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). There is extensive medical evidence in the record, both from Dr. Olson's treatment notes and from the notes and opinions of other sources, consistent with Dr. Olson's opinion. While Dr. Olson's treatment notes are not especially detailed, they are not inconsistent with his assessment of marked limitations. His notes consistently highlight Plaintiff's fluctuating levels of thought process, slurred and delayed speech, and ongoing treatment for anxiety, anger, and nervousness. (R. 27, 426, 431, 434, 448, 458, 465). They discuss Plaintiff's symptoms of anger and panic. (R. 450, 458). Dr. Olson's notes also indicate Plaintiff has disorganized thoughts and loose association. (R. 434). Further, the three medical source statements Dr. Olson completed are consistent with each other as to the severity of Plaintiff's functional impairments.

Dr. Olson's opinion is consistent with statements from other treating sources as well. Notes from Plaintiff' social workers indicate Plaintiff has "difficulty functioning at even a basic level," "difficulty communicating due to his disorganized speech and thought process," and suffers from disorganized thinking, inability to stay focused, and "impulsivity fueled by unmet emotional needs." (R. 834-36, 870-71, 885). All of these treating sources consistently and repeatedly assess functioning commensurate to Dr. Olson's assessment of marked limitations in all functional areas.

Dr. Olson's opinion is also consistent with Plaintiff's testimony at the hearing. Plaintiff testified that a nurse comes to his home daily to help him take his medications. (R. 54). He also

works with a case worker and meets with her in person once per week. (R. 55). Plaintiff testified that either his nurse or his case worker provides him daily reminders to do cooking, cleaning, and chores. (R. 55). Plaintiff also spoke about how he gets "nervous" and "paranoid" around others in public spaces. (R. 59). In addition, he stated that he had called a mobile crisis number for help on several recent occasions. (R. 52).

In sum, since Dr. Olson's opinion was well-supported by and consistent with other substantial evidence in the record, it was entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Nasca v. Colvin*, 216 F. Supp.3d 291, 298 (W.D.N.Y. 2016) (when treating source opinions were supported by claimant's "well-documented record of treatment and were not inconsistent with other substantial evidence in the record," the ALJ should have given them controlling weight); *Merkel v. Commissioner*, --- F. Supp. 2d ---, 2018 WL 6438944, at *7 (W.D.N.Y. 2018) (opinion of treating orthopedic entitled to controlling weight when it was well-supported by evidence in the record); *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 229 (W.D.N.Y. 2016) (treating source opinion should have been afforded controlling weight when supporting by the physician's clinical findings, and the regulatory factors did not support rejecting the opinion). Since the ALJ did not correctly apply the treating physician rule, reversal is necessary. *See Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ's failure to properly apply the treating physician rule requires reversal.").

Moreover, the ALJ erred in failing to discuss (or even consider) the opinions from Plaintiff's social workers. Although the regulations differentiate between "acceptable medical sources" and "other sources" (with social workers falling into the latter category), an ALJ is required to review and account for *all* evidence on the record regardless of its source. *See*

11

*Hernandez v. Astrue*, 814 F.Supp.2d 168, 181-82 (E.D.N.Y. 2011). In fact, assessments and observations provided by social workers are "particularly important, and thus may play a vital role in the determination of the effect of [a claimant's] impairments if the social worker's opinion is the sole treating source that had a regular treatment relationship with the [claimant]." *Id*. at 182. Thus, the regulations require ALJs to apply the same factors for evaluating opinion evidence from acceptable medical sources to their evaluation of opinions from other sources. 20 C.F.R. §§ 404.1527(f); 416.927(f). In fact, an ALJ may assign more weight to the opinion of an other source than to a treating source if the other source "has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id*. Regardless of what weight the other source opinion receives, the ALJ must explain the weight given, and "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id*. The ALJ committed legal error by failing to follow the regulations in this regard.

Four of Plaintiff's social workers submitted detailed letters to the ALJ. The ALJ only considered some of them, and of those he did consider, he evaluated inadequately.

The ALJ gave little weight to the opinions of Rob Lockhart and Wendy Epstein. He explained this weight determination merely by positing that the opinions made a determination within the purview of the Commissioner or were not supported by generally normal mental status exams and effectiveness of medications. (R. 27). The ALJ did not apply the regulatory factors at all in evaluating these opinions.

As to the opinion of Robynne Quinn, the ALJ summarily states that her letter fails to provide an opinion as to Plaintiff's functional limitations. (R. 27). This statement is baffling, as

Counselor Quinn *specifically addresses* Plaintiff's activities of daily living and his social interaction skills in concluding that he would greatly benefit from a program that has intensive support and supervision. (R. 885). Here, again, the ALJ did not apply the regulatory factors at all.

Lastly, and of most concern, the ALJ failed to discuss the letter written by David Cross. This letter is highly detailed and based on Counselor Cross's ten year treatment relationship with Plaintiff. Since, in the Court's view, the letter provides meaningful, probative information as to Plaintiff's functional limitations, the Court is mystified at the ALJ's failure to mention it.

If the ALJ had properly applied the regulatory factors to the opinions of the four social workers, he would have found that these sources regularly treated Plaintiff, provided detailed support for their opinions, and provided conclusions based on observations closely linked to Plaintiff's daily functioning. The ALJ would have also found the opinions consistent with each other. All four opine that Plaintiff needs more intensive programmatic supports and services because he has serious challenges living independently. These letters consistently indicate that while medication may result in some improvement in Plaintiff's symptoms, the nature of his mental impairments makes it difficult for him to regularly take his medication for extended periods of time. The letters also note Plaintiff's history of self-destructive behavior. In addition, the opinions are constant in finding Plaintiff has limitations in attention and focus that would seriously impair his ability to perform work on a sustained basis. Finally, the ALJ would have found the social worker opinions consistent with the opinion of Dr. Olson.

Since the Court has concluded that the ALJ committed legal error in weighing the opinion evidence, the next step is to determine the proper remedy. The court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). While remand is appropriate where further development of the evidence is needed, a court may reverse when there is "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980). When reversal is appropriate, the court may remand solely for the calculation of benefits. *See Nasca*, 216 F. Supp. 3d at 299.

If the ALJ had given controlling weight to Dr. Olson's opinion, he would have found Plaintiff disabled at Step Three. At the third step in the evaluation process, the ALJ considered whether Plaintiff's mental impairments satisfied the requirements under Part B for Listings 12.04 (affective disorders) and 12.06 (anxiety disorders).[4] Those listings, as relevant here, require that Plaintiff demonstrate symptoms that result in at least two markedly limited areas of functioning. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04; 12.06. Since Dr. Olson found Plaintiff was markedly limited in all functional areas, Plaintiff's mental impairments satisfied the Paragraph B requirements of both listings. Accordingly, remand for calculation of benefits is the appropriate remedy. *See Nasca*, 216 F. Supp. 3d at 298 (finding claimant's condition would meet Listing 12.04 had the ALJ properly given controlling weight to treating source opinions); *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 283 (E.D.N.Y. 2005) (holding if the ALJ had given more weight to treating sources' opinions of claimant's marked limitations, he would have found claimant disabled under the listings).

In sum, the ALJ applied the incorrect legal standard by not giving controlling weight to Dr. Olson's opinion and by not appropriately discussing the opinions of the social workers.

---

[4] There is no disagreement as to Plaintiff satisfying Part A of these Listings.

Since there is no further evidence to be developed, the Commissioner's decision is reversed and this matter is remanded solely for calculation of benefits.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion to reverse [Doc. #20] is GRANTED and the Commissioner's motion to affirm [Doc. # 21] is DENIED. The Clerk of the Court is directed to remand this case to the Commissioner for a calculation of benefits.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this __4th__ day of February, 2019, at Bridgeport, Connecticut.